# IN THE COURT OF APPEALS OF IOWA

No. 25-0006
Filed April 9, 2025

**IN THE INTEREST OF J.H.,**
**Minor Child,**

**M.H., Father,**
     Appellant.

**DUSTY LEA CLEMENTS, Guardian Ad Litem,**
     Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, Judge.

A father and guardian ad litem separately appeal the termination of the father's parental rights to his child. **AFFIRMED ON BOTH APPEALS.**

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Newton, for appellant father.

Dusty Lea Clements of Clements Law and Mediation, Newton, attorney and guardian ad litem for appellant minor child.

Brenna Bird, Attorney General, Mackenzie Moran and Michelle R. Becker, Assistant Attorneys General, for appellee State.

Considered without oral argument by Ahlers, P.J., and Badding and Buller, JJ.

**BULLER, Judge.**

The father of a child born in 2018 appeals termination of his parental rights. The guardian ad litem (GAL) also appeals termination of the parents' rights on the child's behalf.[1]  *See In re S.O.*, 967 N.W.2d 198, 207 (Iowa Ct. App. 2021) (noting the child has "a specific, personal, and legal interest in the action to terminate" the parents' rights).  Both the father and the GAL argue a guardianship with the maternal grandmother was in the child's best interest.  The GAL also asserts the juvenile court erred in denying her motion for continuance of the termination hearing when the mother failed to appear as a witness.  We affirm the juvenile court on both appeals.

**Background Facts and Proceedings.**  The child came to the attention of the Iowa Department of Health and Human Services (HHS) in 2023 after allegations of the mother's drug use that resulted in a founded child abuse assessment.  The mother tested positive for methamphetamine and cocaine, and the father was incarcerated at the time.  The juvenile court found the child was in need of assistance and placed the child with his maternal grandmother who had been caring for him "a good year or two" before HHS involvement.  The mother voluntarily consented to the grandmother's guardianship of the child's two older half-siblings, and the grandmother frequently relied on the children's great-grandmother for childcare.

---

[1] The mother's parental rights were also terminated, but she did not file a timely petition on appeal.  Although we question whether we can grant relief to a parent who is not a party to the appeal, we in any event find the GAL's arguments in support of the mother fail on the merits and do not warrant relief to the extent they are properly considered.

The father "was in and out of prison for the past four years" leading up to this case and for fifty-seven of the eighty months of the child's life as of trial. The type of visitations with the father changed depending on where he was incarcerated and never progressed beyond fully supervised. He was consistent with phone and video visits while incarcerated but not consistently involved during the two-and-a-half months of the case he was living at a residential facility. The father also did not maintain good contact with HHS workers.

The father did not testify at the termination trial. He was present for the first day of trial and requested an additional six months for reunification. But prior to the second day of trial, he returned to jail and remained there through the duration of the trial dates. He attended the final day of trial by videoconference. The father rescinded his request for reunification and advocated for a guardianship with the grandmother on that final day.

The GAL had experience with the family from acting as the GAL for the two older half-siblings throughout separate guardianship proceedings. She agreed with the State that grounds for termination were met but told the juvenile court:

> I believe that statements have already been made that [the father] has no intent of challenging [a] guardianship. I believe that it would be in [the child]'s best interests for the Court to grant a guardianship, making [the grandmother] his legal guardian, to the same level . . . of his siblings.

She also expressed concerns that HHS initially agreed a guardianship would be in the child's best interests and that "termination is going to cause a lot of issues" for the child if the grandmother becomes the child's legal mother.

The child was well cared for by the grandmother, who had been caring for the child for approximately three years as of trial. The grandmother wanted HHS

assistance to get legal authority over the child. She testified a guardianship would be less traumatic to the child than termination of parental rights because she "never had problems with the other guardianships" of the two half-siblings—despite agreeing she had a "rocky relationship" with the mother—and because of the child's bond with the mother. But the grandmother agreed she would adopt the child in the event of termination and was "already taking classes" to adopt.

The county attorney and HHS recommended termination of parental rights. Both parents and the GAL requested the guardianship. And the court terminated both parents' rights under Iowa Code section 232.116(1)(d), (e), and (f) (2024). The father and GAL separately appeal. Neither challenges the statutory elements, so we bypass that step of review. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

**Best Interests.** We review best-interests claims in termination of parental rights de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). The father and GAL both argue that a guardianship is in the child's best interests over termination. In our best-interests analysis, we follow section 232.116(2) and "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."

The GAL and the father both rely on *In re B.T.* to reverse termination, claiming a guardianship was preferable. 894 N.W.2d 29 (Iowa Ct. App. 2017). The GAL claims *B.T.* involves "a very similar set of facts" as the current case. But the child in *B.T.* was four years older than this child and better able to articulate and understand permanency, the mother was in treatment, and the mother and grandmother in *B.T.* had a "close, mature, and healthy relationship that is free of

conflict." *Id.* at 34. That is not the case here, where the child is only six years old, and the mother and grandmother have a "rocky relationship" and "mother-daughter drama." And the father here likewise does not have a comparable relationship to the grandmother as the parent in *B.T.*

The juvenile court concluded it was in the child's best interests to terminate parental rights "rather than remain in limbo until his parents can correct their problems, if ever." We agree. Although the father didn't "have any intent of trying to challenge the guardianship later" as of trial, there is no guarantee that would remain true given the child's age of six. The child needs permanency, and the grandmother has been "the permanent force in [the child's] life." And we agree with the juvenile court's reasoning that

> [t]he father's ability to care for his child is obviously affected by his recurring and current imprisonment, his indifference to exercising consistent visits with his child, and his indifference to cooperating with services. He has not been able to care for the child for over the past thirteen months (in reality, the last four years) and will not be able to do so in the near future. His problems . . . have prevented him from providing for the child's safety, long-term nurturing and growth, and physical, mental and emotional needs, and will continue to prevent him from doing so for the foreseeable future.

Our caselaw also recognizes that "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *B.T.*, 894 N.W.2d at 32). And a guardianship requires continued court involvement and provides less stability for the child than adoption by the grandmother. *See id.* at 477–78. We find it particularly telling that, at the beginning of the termination trial, the father requested an additional six months for the child to be returned to his care. His request demonstrates the instability of a guardianship in this case—

there would be nothing preventing the father from challenging the guardianship in the future, as soon as he is out of prison.

Last, we note the father makes a fleeting reference to the permissive exceptions to termination in section 232.116(3) in his petition on appeal. The father bears the burden to prove the application of any exception. *Id.* at 476. But he failed to specify any of the exceptions or provide any argument in support of his claim, and we deem it waived for failure to cite legal authority or advance substantive argument. *See* Iowa Rs. App. P. 6.201(1)(d), 6.1401–Form 5 (requiring "supporting legal authority" for all issues raised); *In re K.D.*, No. 21-0581, 2021 WL 3897419, at *2 (Iowa Ct. App. Sept. 1, 2021) (discussing these rules). We find termination to be in the child's best interests.

**Motion for Continuance.** We review a denial of a motion for continuance for abuse of discretion. *See In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). The GAL asserts the juvenile court abused its discretion in denying a motion for continuance on the final day of trial when the mother failed to appear. When court began more than thirty minutes late to ensure parent participation, the GAL asked for a continuance to permit the mother to testify. The State resisted and argued the mother had arranged transportation from a social worker and that "according to other housemates, . . . the mother communicated nervousness and . . . ran from the residence." The court denied the motion because the mother was at the prior day of trial, knew about the date for three weeks, had scheduled transportation, and there was no guarantee "that the mother would avail herself the next time either."

From what we discern from the record and briefing, the motion for continuance had nothing to do with the father or the termination of his parental rights.  Because termination of the mother's parental rights is not at issue in this appeal, and any effect of her testimony on analyzing termination of the father's parental rights would be collateral at best, we likely need not reach the merits of this issue.  But we do note the GAL offered no excuse below for the mother's absence other than it was "necessary for the court to hear from the mother."  And the GAL has yet to specifically identify how hearing from the mother would have tangibly affected the outcome.  Under these particular circumstances, and to the extent the merits are before us, we find no abuse of discretion in the juvenile court denying the requested continuance and we find no prejudice that would support appellate reversal.

**AFFIRMED ON BOTH APPEALS.**